## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

HENRY KAUFMAN,                          )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )          Case No.09-CV-522-GKF-FHM
                                        )
MAURICE KANBAR,                         )
                                        )
            Defendant.                  )

### OPINION AND ORDER

This matter comes before the court on defendant Maurice Kanbar's Motion to Dismiss [Doc. No. 8].  For the reasons set forth below, defendant's motion is denied.

Plaintiff filed suit against defendant in Tulsa County District Court on May 15, 2009, asserting claims for defamation, tortious interference with business relations, breach of contract, unjust enrichment and intentional infliction of emotional distress. [Doc. No. 2-2, Petition]. Defendant removed the case to federal court on August 14, 2009 [Doc. No. 2, Notice of Removal of Action], and subsequently filed his Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2), alleging lack of personal jurisdiction.

### I.  Background/Procedural Status

This action arises from a soured business relationship which has already been the subject of a lawsuit in the United States District Court for the Northern District of California: *Maurice Kanbar and Kanbar Spirits, Inc. v. Henry Kaufman*, Case No. C-07-2123-VRW.  According to Findings of Fact and Conclusions of Law filed in that case by Chief U.S. District Judge Vaughn R. Walker, Kanbar is an inventor, entrepreneur and philanthropist living in San Francisco;

Kaufman is a retired stock broker living in New York and Tulsa. [Doc. No. 2-3, Findings of Fact 1, 8].   The two have been business associates and friends since 1962. [*Id.,* Findings of Fact 11-13].   In 2001, Kanbar enlisted Kaufman's help with a financial problem regarding Kanbar's charitable foundation. [*Id.,* Finding of Fact 14].   Subsequently, Kaufman–at Kanbar's request–stayed in San Francisco to help Kanbar manage proceeds of approximately $320 million from the sale of Kanbar's company, Skyy Vodka, with the goal of distributing them to charity. [*Id.,* Finding of Fact 17].   One of Kaufman's investments on behalf of Kanbar included approximately $108 million in commercial real estate in Tulsa. [*Id.,* Finding of Fact 25].   Other investments included $100-110 million on a rolling basis in structured products, $19 million in gas ventures in Kentucky and approximately $2.5 million in loans and other investments in Tsar Nicoulai Caviar Company. [*Id.*].   Ultimately, Kanbar and Kaufman had a falling out and Kaufman's involvement with Kanbar's finances ended by May or June 2006. [*Id.,* Findings of Fact 97-102].   Kanbar and Kanbar Spirits, Inc., sued Kaufman in San Francisco superior court, alleging fraud, breach of fiduciary duty and negligence. [*Id.,* Conclusion of Law 105].   The case was removed to federal court and the fraud claim was dismissed.   [*Id.*, Conclusions of Law 105-106].   Kanbar sought "not less than $20 million" on the two remaining claims. [*Id.,* Conclusion of Law 106].

After a two-day bench trial, the trial court on October 22, 2008, entered its Findings of Fact and Conclusions of Law in which it found against Kanbar and in favor of Kaufman on Kanbar's negligence claim. [*Id.,* Conclusion of Law 128].   With respect to the breach of fiduciary duty claim, the court found Kanbar had not proven Kaufman breached any fiduciary duty of care or obedience he owed Kanbar [*Id.,* Conclusions of Law 113-116].   It concluded

2

Kaufman had breached a fiduciary duty of candor to Kanbar by making a interest-free loan of $250,000 to a business associate in Tulsa, John Snyder, without consulting Kanbar. [*Id.,* Conclusion of Law 120]. The court determined Kanbar was entitled to damages equal to the reasonable rate of interest on the $250,000 over the term of the loan. [*Id.,* Conclusions of Law 130-131].

In this action, Kaufman alleges Kanbar has made false, malicious and unprivileged statements about Kaufman, including that he is incompetent in his professional capacity, is a liar, engaged in self-dealing, and committed fraud and theft. [Doc. No. 2-2, Petition, ¶7]. Kaufman contends Kanbar has made such statements to Paulette Millichap, Alan Meyers, Dr. David Sudarsky, Phyllis Rich Flood Feder, Loretta Martin, Bernard Osher and Donna Huggins. [*Id.,* ¶¶8-14]. Kaufman also claimed Kanbar tortiously interfered with unspecified business relationships by making such statements and by filing the California lawsuit. [*Id.,* ¶¶16-25]. He asserted claims for breach of contract and unjust enrichment based on services he performed on behalf of Kanbar but was not paid. [*Id.,* ¶¶26-36]. Finally, he asserted a claim for intentional infliction of emotional distress. [*Id.,* ¶¶37-39].

In his Motion to Dismiss, Kanbar contends he has no contacts with Oklahoma in his personal capacity, and this court therefore lacks jurisdiction over him.

## II.  Facts Related to Personal Jurisdiction

Kanbar is a resident of San Francisco. He has never been a resident of Tulsa. [Doc. No. 8-2, Decl. of Maurice Kanbar, ¶2]. He has not, in his individual capacity, registered to do business in Oklahoma and he contends he does not individually conduct business in ths State. [*Id.,* Kaufman Decl., ¶6]. He has not maintained any banks, savings or loan accounts in

3

Oklahoma at any time relevant to this action. [*Id.,* ¶4].

Kaufman conducted negotiations in Tulsa for the acquisition of commercial real estate in Tulsa in 2005.  He contends these negotiations were on behalf of Kanbar personally. [Doc. No. 9-2, Decl. of Henry Kaufman, ¶11].  The property acquisition was in the form of 21 buildings in downtown Tulsa for a total purchase price of approximately $108 million. [*Id.*] It appears that none of the property was conveyed to Kanbar personally; rather, all of the property was conveyed to Kanbar Spirits, Inc. ("KSI"), which Kanbar owns, and then to one of four limited liability companies created on behalf of Kanbar–Narragansett Properties, LLC, Pocasset Properties, LLC, Navajo Properties, LLC, and Ipswich Properties, LLC. [*Id.,* Kaufman Decl., ¶¶13, 15 and Doc. No. 9-5, Ex. 4].  Based on conveyances from KSI to the LLC's, it appears that The Maurice S. Kanbar Revocable Trust u/a/d, of which Kanbar is trustee,  is the sole member of each of the LLC's. [Doc. No. 9-5, Ex. 4].[1]

According to Kaufman, Kanbar made a visit to Tulsa in 1985 to explore the possibility of establishing a residency in Oklahoma. [*Id.,* Kaufman Decl., ¶25].  Kanbar personally acquired title to residential property in Broken Arrow in 1997, and apparently still owns the property. [*Id.,* Kaufman Decl., ¶41 and Doc. No. 9-6, Ex. 5, General Warranty Deed].  Kanbar filed a grievance against attorney Raymond Feldman and the law firm of Feldman, Franden, Woodard,

---

[1]Kaufman lists a number of activities by Kanbar which he contends are sufficient to establish personal jurisdiction.  For example, in 2006, Kaufman alleges Kanbar had lunch at The Summit Club in downtown Tulsa with Don Walker, President of Arvest Bank in Tulsa, for the purpose of determining the availability of mortgage financing for the Tulsa properties. [*Id.,* Kaufman Decl., ¶26].  During another visit to Tulsa, Kaufman alleges Kanbar negotiated with then-Mayor Kathy Taylor and Spirit Bank for an entrepreneurial resource and seminar center to be established in one of the buildings owned by Kanbar's entities. [*Id.,* Kaufman Decl., ¶27]. However, the commercial buildings are owned by LLC's, and Kanbar's visits appear to have been related to business of the LLC's.

Farris & Boudreaux complaining about fees charged in connection with legal work performed in connection with the acquisition of the Tulsa commercial real estate. [Doc. No. 9-12, Response to Oklahoma Bar Association Notification Letter of June 7, 2007 and Grievance by Maurice Kanbar, DC 07-163].  According to Kaufman, the Oklahoma Bar Association, after investigation, dismissed the complaint. [Doc. No. 9-2, Ex. 1, Kaufman Decl., ¶21].

Kaufman further alleges that at all relevant times, he was a financial consultant and advisor to Kanbar for the purpose of managing Kanbar's financial assets and affairs. [*Id.,* Kaufman Decl., ¶1].  While residing in Tulsa, he had daily telephone communications with Kanbar not only about the Tulsa properties but also, about Kanbar's personal and professional business activities.  [*Id.,* Kaufman Decl., ¶32].   He also had daily telephone and e-mail communication from Tulsa with Kanbar's agents in California, including Joe DeGirolamo, Rachel Warren and Karine McClanahan, concerning not only the Tulsa properties, but also Kanbar's personal activities. [*Id.,* Kaufman Decl., ¶33]. He alleges all of Kanbar's agents and advisors functioned on behalf of Kanbar personally and for his business entities, and work interchangeably with and shift among his various personal activities and business entities. [*Id.,* Kaufman Decl., ¶37].  Kaufman states in his Declaration that he hired the accounting services of Don DeSelms, located at 4870 S. Lewis Avenue, Suite 200 in Tulsa for Kanbar personally and for his business interests.  [Doc. No. 9-2, Ex. 1, Kaufman Decl., ¶23].

Further, in the California lawsuit, Kanbar alleged Kaufman had breached fiduciary duties Kaufman–as Kanbar's and KSI's agent–owed both Kanbar and KSI.  The court, in its Findings of Fact and Conclusions of Law, concluded:

> When Kaufman agreed during informal conversation with Kanbar to manage Kanbar's investments, Kaufman became a gratuitous agent of Kaufman [*sic*],

with broad–though loosely defined–authority to make investments on Kanbar's behalf.  As such, Kaufman owed the fiduciary duties of a trustee to Kanbar.

[Doc. 2-3, Conclusion of Law ¶109].  Further, the court found the sole breach of *any* duty by Kaufman to Kanbar personally occurred in connection with Kaufman's decision, without disclosing to Kanbar, to make an interest-free loan to Snyder, a consultant on the acquisition of the Tulsa commercial property. [*Id.,* Conclusion of Law ¶120].  It ordered the parties to submit evidence of the dates of disbursement and repayment of the loan to Snyder and a reasonable interest rate for the loan and stated:

> Thereafter, judgment will be entered against Henry Kaufman and in favor of Maurice Kanbar and Kanbar Spirits, Inc in an amount to be determined by the court.

[*Id.,* Conclusion, ¶138].  Thus, it is clear that Kanbar sought and obtained a judgment against Kaufman for breach of a fiduciary duty Kanbar contended Kaufman owed to him personally, as well as to KSI–and the breach occurred in connection with Kaufman's conduct of Kanbar's affairs in Oklahoma.

### III.  Analysis

In a diversity case, the district court's exercise of personal jurisdiction must comport with the standards of both the forum state's long-arm statute and the United States Constitution. *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir. 1990).  In Oklahoma, this two-part inquiry collapses into a single due process analysis since Oklahoma's long-arm statute, 12 O.S. §2004, extends jurisdiction in Oklahoma to the limits of due process.  *Rambo v. American Southern Insurance Company,* 839 F.2d 1415, 1416-17 (10th Cir. 1988).

"A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts between the defendant and

6

the forum state.'"  *World-Wide Volkswagen Corp. V. Woodson,* 444 U.S. 286, 291 (1980),

quoting  *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  The defendant's

contacts with the forum state must be such that maintenance of the suit "does not offend

traditional notions of fair play and substantial justice."  *Id.,* quoting *International Shoe,* 326 U.S.

at 316.  "The sufficiency of a defendant's contacts must be evaluated by examining the

defendant's conduct and connections with the forum state to assess whether the defendant has

'purposefully availed itself of the privilege of conducting activities within the forum State.'"

*Rambo,* 839 F.2d at 1417, quoting *Hansen v. Denckla,* 357 U.S. 235, 253 (1958).

> With respect to burden of proof, the Tenth Circuit has stated:

> The plaintiff bears the burden of establishing personal jurisdiction over the
> defendant.  Prior to trial, however, when a motion to dismiss for lack of
> jurisdiction is decided on the basis of affidavits and other written materials,
> the plaintiff need only make a prima facie showing.  The allegations in the
> complaint must be taken as true to the extent they are uncontroverted by the
> defendant's affidavits.  If the parties present conflicting affidavits, all factual
> disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie
> showing is sufficient notwithstanding the contrary presentation of the moving
> party.

*Rambo,* 839 F.2d at 1417.  A district court relying on documentary evidence in its consideration

of a personal jurisdiction motion "may not weigh the factual evidence."  *Ten Mile Industrial*

*Park v. Western Plains Service Corporation,* 810 F.2d 1518, 1524 (10th Cir. 1987).  Thus:

> [T]he determination involves an application of the law to the facts as set forth
> in the affidavits and complaints, favoring the plaintiff where a conflict
> exists, as well as a determination as to the legal sufficiency of plaintiff's
> jurisdictional allegations in light of the facts presented.

*Id.*

> Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts

with the forum state is "specific jurisdiction."  *Rambo,* 839 F.2d at 1418.  In contrast, when the

suit does not arise from or relate to the defendant's contacts with the forum and jurisdiction is based on the defendant's presence or accumulated contacts with the forum, the court exercises "general jurisdiction." *Id.,* citing *Burger King Corp. v. Rudzewiz,* 471 U.S. 462, 473 n. 15 (1985), *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9 (1984), and *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir. 1987).   Here, plaintiff asserts both general and specific jurisdiction apply.

### B.  General Jurisdiction

A court may assert general jurisdiction over a foreign defendant if the defendant has maintained "continuous and systematic contacts" with the forum and the exercise of jurisdiction would not offend notions of "fair play and substantial justice." *Helicopteros Nacionales,* 466 U.S. at 415 & n.9.  The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  The Tenth Circuit has set forth numerous factors relevant to this analysis, including whether the defendant engages in business in the state; owns, leases or controls property or assets in the state; or maintains employees, offices or agents in the state. *Soma Med. Int'l. v. Standard Chartered Bank,* 196 F.3d 1292, 1295-96 (10th Cir. 1999).   Additionally, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. *Rambo,* 839 F.2d at 1419 (10th Cir. 1988) citing *Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1313-14 (10th Cir. 1982).

Plaintiff contends Kanbar's activities in Oklahoma over the years establish "continuous and systematic contacts" with the forum sufficient to warrant the court's exercise of general

8

jurisdiction over him.  The activities Kaufman identifies can be generally grouped as (1) those

Kanbar or his employees or agents undertook on Kanbar's  personal behalf (as opposed to on

behalf of his business entities) and (2) those that Kanbar or his employees or agents undertook

on behalf of Kanbar's business entities .  The distinction is important because, as a general rule,

courts may not exercise jurisdiction over individual officers or employees of business entities

merely on the basis of contacts sufficient to justify exercise of personal jurisdiction over the

business entity.  *Calder v. Jones,* 465 U.S. 783, 790 (1984).[2]  Here, much of the activity recited

by Kaufman was clearly undertaken on behalf of the business entities that own or owned the

---

[2]Kaufman urges the court to apply the corporate shield doctrine and attribute acts by
Kanbar and others on behalf of the business entities that own the Tulsa property to Kanbar
personally.  The focus of the corporate shield doctrine is "the fairness of asserted jurisdiction
over a person who is acting solely in the interests of another."  *Home-Stake Production Company
v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1017-18 (10th Cir. 1990).  The Tenth Circuit has
articulated the test as follows:

> In determining whether a corporation for which an owner-employee acts is really
> 'another,' it is sufficient to inquire whether the corporation is a shell entity.  If
> the corporation is merely a shell, it is equitable, even if the shell may not have
> been used to perpetrate a fraud, to subject its owner personally to the court's
> jurisdiction to defend the acts he has done on behalf of his shell.

*Id.* at 1018 quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903 (2d Cir. 1981).  The
Tenth Circuit in *Home-Stake* held that a bankruptcy trustee seeking to sue an individual who
owned corporations "need only demonstrate that the corporation on whose behalf [defendant]
was allegedly acting were in fact mere instrumentalities."  907 F.2d at 1018.  Applying
Oklahoma law, the court held a corporation may be deemed to be a mere instrumentality of an
individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances
are not kept separate from individual finances, individual obligations are paid by the corporation
or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham.
*Id.*  Kaufman alleged in his Declaration that "...Kanbar did not observe corporate formalities
concerning management of his entities.  The entities had no directors." [Doc. No. 92, Kaufman
Decl., ¶8].  This general allegation, without particular reference to the LLC's at issue, does not
establish the LLC's were "mere instrumentalities" for purposes of jurisdictional analysis.

Tulsa properties. The court does not believe Kaufman has alleged facts adequate to establish that the entities were mere "instrumentalities" of Kanbar or to trigger application of the fiduciary shield doctrine. *See* n. 2 above.

However, many of the alleged activities appear to have been undertaken by or on behalf of Kanbar personally, including:

- Kanbar's 1985 visit to Tulsa to explore the possibility of establishing a residence in Oklahoma;

- Kanbar's purchase and continued ownership of residential property in Broken Arrow;

- Kanbar's filing of a bar complaint against Tulsa attorney Raymond Feldman and his law firm;

- Kaufman's representation that while living in Tulsa in connection with acquisition and management of Tulsa properties, he was a financial consultant and advisor to Kanbar for the purpose of managing all of Kanbar's financial assets and affairs, and communicated by telephone daily with Kanbar about not only the Tulsa properties, but other personal and business matters of Kanbar;

- Kaufman's regular communication by telephone and e-mail with Kanbar's employees and agents in California about not only the Tulsa properties but also other personal and business matters of Kanbar;

- Kaufman's retention, on behalf of Kanbar, of Tulsa accountant Don DeSelms for accounting services related to Kanbar's personal and business interests.

- Kanbar's contention in the California law suit that Kaufman breached fiduciary

10

duties Kaufman owed to him as his personal agent in connection with conduct of

his business affairs, including conduct in Tulsa.

Based on these activities, the court concludes Kanbar has had "continuous and systematic

contacts" with this state sufficient to justify exercise of general personal jurisdiction over him.

### B.  Specific Jurisdiction

Where a defendant's intentional conduct in one state is calculated to, and does, cause

injury to a person in another state, personal jurisdiction in the second state is proper.  *Calder v.*

*Jones,* 465 U.S. 783 (1984).  In *Calder,* the plaintiff, a professional entertainer, brought suit in

state court in California against the National Enquirer, a reporter and an editor, claiming she had

been libeled in a National Enquirer article written and edited in Florida.  The reporter and editor

claimed the California court lacked personal jurisdiction over them.  The Supreme Court

acknowledged the individuals' contacts with California could not be judged according to their

employer's activities there, but stated, "[o]n the other hand, their status as employees does not

somehow insulate them from jurisdiction."  *Id.* at 790.  In so holding, the court observed the

allegedly libelous story was about the California activities of a California resident whose

television career was centered in California; it was drawn from California sources; and the brunt

of the harm, both in terms of plaintiff's emotional distress and damage to her professional

reputation, occurred in California.  *Id.* at 789.  The court stated:

> "Under the circumstances, petitioners must 'reasonably anticipate being haled
> into court there' to answer for the truth of the statements made in their article.
> An individual injured in California need not go to Florida to seek redress
> from persons who, though remaining in Florida, knowingly cause the injury
> in California."

*Id.* at 790, citations omitted.

This situation is analagous.  Kaufman, who resides in Tulsa, alleges intentional conduct by Kanbar has damaged his reputation and business and caused him emotional distress in Oklahoma.[3]

Moreover, Kanbar alleged in the California lawsuit that Kaufman, as Kanbar's agent in Tulsa, had breached fiduciary duties to Kanbar in performing duties as a personal agent of Kanbar in Oklahoma and elsewhere.  Kaufman's action, in turn, arises from alleged statements Kanbar made about Kaufman's performance of agency duties in Oklahoma and elsewhere. Thus, this suit "clearly arises out of or relates to" Kanbar's contacts with Kaufman in the forum state.  *See Rambo,* 839 F.2d at 1418.

Therefore, the court finds Kaufman has alleged facts sufficient to establish the court has specific jurisdiction over Kanbar.

## V.  Conclusion

For the reasons set forth above, defendant's Motion to Dismiss [Doc. No. 8] is denied.

ENTERED this 27th day of February, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[3]Kaufman has alleged one of the persons to whom Kanbar made defamatory statements, Paulette Millichap, is located in this state.  Kanbar attached to his Reply brief the Declaration of Paulette Millichap, who denies that Kanbar ever made defamatory statements about Kaufman to her. [Doc. 10-3].  Kaufman, however, has alleged the remarks *were* made and moreover, more generally, that he was injured in Tulsa by Kanbar's statements to other individuals as well. Given that the court must, at this stage, resolve all factual disputes in favor of plaintiff, the Millichap Declaration is not dispositive of the personal jurisdiction dispute.